----------o----------

## PARROTT, Adm'r, vs. NIMMO et al.

MARRIAGES: *When in another state, and separate property of wife invested in this, etc.*

Husband and wife were married in the state of Alabama, both living there at the time, and the husband, having become possessed of the property and money of the wife, moved with his family to this state, and with the money and effects so acquired by the marriage, purchased lands and took a deed in his own name, against the express wish of the wife; husband and wife died leaving minor heirs; the lands were sold by administrator, under order of the probate court, he and the purchaser of the land at such sale having knowledge where the original purchase money of the lands came from. On bill by the heirs to vest title in the lands in them as heirs of the mother: *Held*, that by the laws of Alabama, the property and money so acquired on marriage by the husband remained the separate property of the wife, and that the lands so acquired by him in this state descended to the heirs of the mother.

APPEAL from *St. Francis* Circuit Court.

Hon. W. C. HAZLEDINE, Circuit Judge.

*U. M. Rose*, for appellant.

*E. H. English* and *B. C. Brown*, for appellee.

BENNETT, J. Some time in 1854 there lived in the state of Alabama two persons, one by the name of James P. Nimmo, and the other by the name of Ann E. Hughes, who was a minor. In that year these two persons were married to each other. At the time of this marriage, James P. Nimmo, the

husband, was a person without property or effects. Mrs. Nimmo, the wife, was the owner of a considerable estate, consisting chiefly of slaves and money, held for her by her guardian in Alabama. After she became of age this estate, slaves and money, came into the hands of her husband, as her property, while they were still living in Alabama. In 1858, James P. Nimmo, the husband, carried or brought this property to the state of Arkansas, where he purchased of one Jarmin Roonce, the southwest quarter of section ten, in township four north, range three east, for about twenty-four hundred dollars, and had the deed made out in his own name. Shortly after this purchase, Mr. and Mrs. Nimmo removed from the state of Alabama to the state of Arkansas, and took possession and lived on the lands, and proceeded to make valuable improvements on them. Mrs. Nimmo died in 1861. James P. Nimmo died in 1865; both dying intestate, and leaving them surviving, Felicia B., Sue P. and Mollie R. Nimmo, their children and heirs at law, not only of their father, James P., but of their mother, Mrs. Ann E. Nimmo.

After the death of James P., one John M. Parrott was appointed by the proper probate court, administrator *de bonis non* of his estate, and took possession of the above described tract of land, as belonging to that estate.

The estate of James P. Nimmo being then considerably indebted to various persons, the administrator, Parrott, obtained an order from the proper tribunal to sell the real estate. At the sale, one John H Cole, who claimed to be purchasing for and on behalf of his infant son, Hugh M. Cole, bought it; Parrott, as administrator, executing a bond for title to him, and Cole took possession of the land, and now has it. At the October term, 1871, of the circuit court of St. Francis county, Felicia B., Sue P. and Mollie R. Nimmo, the children of James P. Nimmo and wife, filed their bill of complaint, alleg-

ing the above stated facts, and, in addition, state that the deed to their lands was taken in the name of their father against the express wish and desire of their mother; that these lands were purchased with the means and money of their mother, and the title should have been made to her; and they contend that, by the laws of Alabama, the place where the father took possession of the mother's property and removed it to Arkansas, and converted it into these lands, they belonged to the mother, notwithstanding their father took the title in his own name.

They also allege that all the above facts in relation to where the purchase money of these lands came from, and all the other facts in relation to the proper ownership of these lands, were well known to Parrott, the administrator, and to Cole, the purchaser, long before, and at the time of the sale of the lands by said administrator.

They pray for a decree vesting the title to the lands in them, as the heirs of their mother.

The answer of the defendants states that they know nothing about where the purchase money of the lands came from, nor that James P. Nimmo received possession of any money or other property belonging to his wife, and that they know nothing of the laws of the state of Alabama as to the rights of married women in regard to property or moneys descending to, or otherwise belonging to them, or what power or authority she would have over it in case the same came to the husband, and was by him invested in other or different property. The answer admits that the land was purchased as alleged, with the exception as to the purchase money being the separate property of the wife of James P. Nimmo.

The answer admits that prior to the sale of these lands by the administrator, they heard casual rumors that said complainants intended to claim this land upon the grounds set up

in said bill, but denies that they ever heard any certain or positive information of these facts. In general terms, they deny that the law and equity is with the complainants, and ask that the complaint be dismissed.

Quite a number of depositions were read upon the hearing.

The court found, 1. That by the laws of Alabama, the property and moneys inherited by the wife, from her father, remain her separate property. Notwithstanding its reception and reduction into possession by the husband, she could recover it, no matter what disposition he made of it (See Trans., p. 62–63). 2. That the money paid to Roonce for the land in controversy by James P. Nimmo, her husband, was the separate property of Ann Elizabeth, the wife, and that she died, leaving these complainants her heirs, etc. See Trans., p. 63. 3. That said Parrott and Cole, the defendants, had due and full notice of the rights in equity of the complainants, at the time of said pretended sale to Cole, and decreed that the bond for title from Parrott, administrator, to Cole, be cancelled, and that the title to said lands be divested out of all the defendants herein, and vested in the complainants, and that John and Hugh Cole surrender the possession to the guardian of the complainants. From which decree an appeal was granted.

The evidence in this case clearly shows that the lands were bought and paid for out of the means and moneys of the wife of James P. Nimmo, the mother of these complainants, and that said means and moneys came to her from the estate of her father, and went into the possession of her husband while she and her husband were residing in the state of Alabama, and that he took the title to these lands in his own name against the expressed wish and desire of his wife.

Under this state of facts, what were the rights of Mrs. James P. Nimmo in these lands, as against her husband or his creditors?

The law of the state of Alabama in relation to the separate estate of the wife is made a part of the complainant's case, and was not only proven by witnesses, but was shown by the statutes and decisions of that state. By the law of Alabama, the money and effects of the wife remain her property even though reduced to possession by her husband.

"All property of the wife held by her previous to the marriage, or which she may become entitled to after marriage, in any manner, is the separate estate of the wife, and is not subject to the payment of the debts of the husband. Property thus belonging to the wife vests in the husband as the trustee. * * The property of the wife or any part thereof may be sold by the husband and wife, and conveyed by them jointly. The proceeds of such sale is the separate estate of the wife, and may be reinvested in other property, which is also the separate estate of the wife; or such proceeds may be used by the husband in such manner as is most beneficial to the wife." Code of Alabama, 1852, secs. 1982-3-4-5.

If the husband makes any investment or disposition of the wife's money or property, she may follow it and subject it to her use and benefit. *Robertson's Heirs v. Robertson's Ex'rs*, 16 Ala. (N. S.), 273; *Ween's Ex'r v. Bryan and Wife*, id., 302; *Johnson v. McCarmice*, 26 id., 623; *Wilson v. Shepherd*, 28 id., 623.

By this statement of facts and the law of Alabama, there can be no doubt that the property and moneys used in the purchase of these lands were the separate estate of Mrs. Nimmo at the time of her and her husband's removal from Alabama to Arkansas. Now did the removal to Arkansas divest the wife's title, and the money and property become the husband's absolutely?

STORY, in his Conflict of Laws, secs. 125-183, after an extended discussion of the great diversity of laws existing in

different countries, as to the incidents of marriage, lays down the following, among others, as rules of general application : First. Where parties are married in a foreign country and there is an express contract respecting their rights and property, present and future, it will be held equally valid everywhere, unless under the circumstances it stands prohibited by the laws of the country where it is sought to be enforced.  *  *  Third. Where there is no express contract, the law of the matrimonial domicile will govern as to all the rights of the parties to their present property in that place, and as to all personal property everywhere, upon the principle that movables have no *situs*, or rather, that they accompany the person everywhere."

In the case of *O'Neil v. Henderson, Trustee,* 15 Ark., 235, this court expressly decides that " when a perfect title according to the laws in force in the state in which it is made vests property in the wife or in trustees for her use, such title remains in her notwithstanding any change of residence of the husband, who may exercise an apparent control and ownership of the property, or any act of fraud or negligence on the part of the trustee or husband, nor is she required to do any act to protect her title, such as recording in this state the evidence of her title." *Yarbrough v. Arnold,* 20 Ark., 592; *Bank of United States v. Lee,* 13 Pet., 107.

The moneys and property being the separate estate of the wife, even after the change of domicile to Arkansas, did the conversion into and investment in lands of the same by the husband, divest the wife of all interest in both moneys and the lands so purchased ?

In this case it was a fraud, no doubt, upon the rights of the wife, for her husband to invest her separate property in lands, and take the title to himself against her solemn protest.  But we think this question has been fully settled by this court,

and nothing further need be said on this point. In the case of *Kirkpatrick v. Buford*, 21 Ark., 268, the court say: "If by a mere sale of the separate estate and the investment of the proceeds in the purchase of other property, she (the wife) lost her estate and the husband acquired the property thus purchased without any intention on her part to give it to him, then this unqualified right of disposition was a delusion, and its exercise an injury. See also case cited in this opinion; also *Allen v. Hightower*, 21 Ark., 316.

The appellants contend that the case should be governed by the decision in the case of *Ferguson v. Moore*, 19 Ark., 384. That it does not, is shown by the opinion in that case itself. In the case now under consideration, it is clearly shown the money used in the purchase of this land was the undoubted "separate property" of the wife.

In *Ferguson v. Moore*, the decision was expressly placed upon the ground that under the law of Arkansas, the land inherited by Mrs. Moore from her father was not separate property.

The court says, "It was money received by the husband for lands inherited by the wife, and sold and conveyed by their joint deed. The wife's right and title to the lands had vested in her while she was a *feme sole*; when she afterwards became a wife, the marital rights of the husband attached to them, as those rights are known at the common law, although the statute of married women was then in force, because that statute in none of its provisions extends to such a case." And further on in the same opinion, Justice SCOTT continuing, says: "And hence, too, the doctrine contended for by counsel for the appellees, that the right of property in a married woman attaches to the fund arising from the sale of her sole and separate estate, to the same extent which existed in regard to the property before the sale, although, doubtless,

sound in itself, has no application to this branch of the case, because here, as we have seen, the wife had no sole and separate property in the land in question." And having no separate property in the land, she had none in its proceeds. In the case before us, Mrs. Nimmo had a separate property in the money, and continued to have the same property in its products. If she had, certainly her heirs can assert the same rights she had, if they have not compromised them in any manner.

The appellants attempt to make a distinction between their case and the case of *Kirkpatrick v. Buford* and *Allen v. Hightower*, by saying, that in those cases the title in the property was in the name of the wife, and creditors were seeking to subject the property to the husband's debt. We can see no material difference, so far as the wife's interest is concerned. In the one, the separate interest is asserted expressly, in the other it is shown to exist, and her heirs are endeavoring to have her rights asserted by a competent court. The question as to the establishment of the separate property is not objected to. In one, creditors are endeavoring to set aside the wife's title. In this, the wife or her representatives are endeavoring to get a title. But the principles of law, as far as the establishment of the rights of the separate estate is concerned, are the same in both cases. *Marsh v. Marsh*, 43 Ala., 677; *Damon v. Hall*, 38 Barb., 139; *Rich v. Rich*, 12 Minn., 471.

The last point necessary to be considered is, that the title being in the husband for years, and forming for him a basis of credit, it would be inequitable to now declare that the property belongs to some other person. Cole, the purchaser, cannot claim to be an innocent purchaser for value, for he had ample notice of the rights of the complainants and of their intention to enforce them.

Upon the hearing, the deposition of P. Dunn was read;

he swears that, "a short time before the land described in this bill was sold by the defendant Parrott, as administrator, to defendant Cole, I met the defendant John H. Cole, and he inquired of me, whether or not he would be safe in buying the land above referred to at administrator's sale? I told him that I had been consulted by the guardian of Mrs. Nimmo's children as to whether or not they could recover the land as the separate property of their mother, and that, upon the statement of facts submitted, I had given my opinion that they could recover, and I had been retained to file a bill, and should do so as soon as I could get the necessary data. I then gave him a detailed account of the facts and of the law of the case as I understood it, informing him that the plaintiffs would assert their rights. Defendant Cole afterward purchased the land."

Where lands are sold in the presence of parties having an interest, without giving notice at the time of sale, it does not affect their interest if the lands are purchased by one having notice thereof. *Hornor, as Trustee, v. Hanks,* 22 Ark., 573.

In every aspect of this case, the court below was correct. Decree affirmed.