## MARCHBANKS v. BANKS ET AL.

1. BONA FIDE PURCHASER: *Purchase pendente lite.*

   To subject a purchaser to the notice of *lis pendens*, in the absence of actual notice, the purchase must be made from one who was a party to the suit at the time.

2. SAME: *Payment of part consideration: Lien for part paid.*

   A purchaser, though without notice of outstanding equities, is not an innocent purchaser unless he has paid the whole consideration. Payment of part and securing the residue to be paid are not sufficient. But he has an equity to reclaim out of the property the part innocently paid.

APPEAL from *Phillips* Circuit Court in Chancery.

Hon. M. T. SANDERS, Circuit Judge.

*Tappan & Hornor* for appellee.

1. Before the Burford notes were paid by foreclosure and sale, the original suit was pending, and appellant thus had full notice of appellee's claim. To claim the benefit of a *bona fide* purchaser without notice for value, it is necessary to aver that the vendor was seized in fee and in possession, should state consideration, and deny notice previous to and down to the time of paying the money and delivery of the deed. (*29 Ark., 568; 27 Ib., 102.*) The appellant succeeded to no better rights than Burford had, by her purchase at the foreclosure sale.

2. The tax deeds were void, and gave no right except for taxes paid.

EAKIN, J. This appeal brings back a branch of the case of *Banks et al. v. Green et al.*, reported in *35 Ark., p. 84*, to which report reference is made for further explanation of the nature of the controversy.

On the remand of the cause the bill was amended, and all proper parties seem to have been brought in. It was also shown that J. C. Green, the second husband of Mrs. Yarborough (incorrectly named in the former report as P. C. Green) had left a will upon his death in 1875. He thereby devised to his second wife, Alicia N. Green, one-half of all his real estate; and the other half to his two grand children, J. D. and George A. Boykin, nominating Dr. D. H. Stayton as his executor, who qualified.

These grand children were descendants of his first wife, formerly Mrs. Yarborough. The issue of that marriage had been an only daughter, who had intermarried with one Boykin and died, leaving these children. They, it seems, have elected to claim their share of the whole property as heirs of the grandmother, in opposition to the second wife, and the vendees of the grandfather, and consequently appear as complainants.

The lands originally bought by Mrs. Yarborough *dum sola*, and to which her second husband had obtained the legal title, in his own name, by giving up the title bond, had been much divided up, having been included within the bounds of the town of Marianna. Many of the lots had been sold by Green.

All the purchasers were brought in by the amended bill, and their rights in the progress of the suit were determined. Some were conceded, or clearly shown to have been

innocent purchasers. Others effected compromises, which were confirmed by decree of court. As to the rest it was held that Mrs. Yarborough had purchased the lands as alleged, and was the equitable owner, subject to the curtesy of Green, and that the legal title was in him, his heirs and vendees with notice, clothed with a trust, after his death, in favor of the heirs of his first wife.

Amongst those lands thus held to be affected with the trust, were two lots or parts of lots claimed by Julia C. Marchbanks, formerly Freeman. She made a separate defense, and she alone appeals. All the others acquiesce. It will not be necessary to consider any part of the case not affecting her interest.

The lots she claims are numbered 16 and 17 in block "A," which constituted the family residence and grounds of said Green. In his devise of a half interest in his real estate to his widow Alicia, he had provided that upon any division to be made of the lands between her and his two grand children, the house and grounds should be assigned to her. In effect, by the will, if Green could devise the lands at all, she was to have the dwelling and so much more of land as would make her share equal to that of the two grand children. Such, at least, would be the effect if a partition in value could be made consistently with that object.

The amended bill, filed after remand of the cause, alleges that after the death of Green, the widow Alicia N. sold and conveyed said lots 16 and 17 to J. S. Burford, who had since died, and that they were then in possession of Lowenthal, one of the defendants; alleging further, that they were purchased with full notice that the complainants claimed title to the same through their ancestor, Mary M. Yarborough. This amended complaint was filed on the twenty-sixth day of October, 1880, and on the

twenty-first day of May, 1881, Mrs. Julia C. Freeman (the appellant) was by order of court made defendant. The complaint was then further amended, alleging that she was in possession of lots 16 and 17, by her tenant Elder, also made defendant. It charges that she has no title, and that if she purchased from any one, the purchase was made pending this suit, and that she is not an innocent purchaser for valuable consideration. She was duly served with notice of the complaint, and answered, saying:

That by virtue of the seizin of J. C. Green, and his devise of the property, his widow, Alicia, was the legal owner; that in 1876 she sold and conveyed the lots to Burford for $1,200, of which $200 was paid in cash, and the balance secured by note. These notes she assigned for value to Sullivan, who afterwards sold them to W. D. Freeman. After Freeman's death, his administrator, by bill in equity, obtained a foreclosure of the vendor's lien. Defendant purchased the lots at the commissioner's sale, on the twenty-eighth day of July, 1879, paid for them and obtained a deed, which was approved by the court. She states further, that Mrs. Green was in possession when she sold to Burford; that Burford made inquiry and found the title to be clear; that both he and defendant in good faith paid the purchase money recited in their deeds, without any notice of complainant's equity, or any knowledge of or reason to suspect the fraud which had been committed by Green, down to the time of paying the money and taking the deeds.

She defends, further, upon tax titles, which she exhibits, and alleges that before summons herein, the complainants did not file the affidavit of tender required by statute; also, the statute of limitations of two years.

The court, upon hearing, held that the lots were the property of complainants, and that Mrs. Marchbanks was

not an innocent purchaser for value; and further, that the deeds under which she also claimed title were void, because there had been no valid or legal assessment of the property for taxation. They were held entitled to recover possession and to costs, and a reference was made to a Master to take proof of the rents and profits for which she was chargeable, and report at the next term.

This decree, so far as it declares the lands subject to the trust is final, and therefore subject to appeal and correction here, as to all errors or omissions which may not be mere matters of account to be adjusted on the coming in of the report.

The counsel prosecuting the appeal have not favored us with any brief, or assignment of errors, intimating the points for which they contend. In pursuance of our statutory duty we have spent some time in an endeavor to find them out, by going through the somewhat voluminous transcripts brought up on the former appeal and on this one, in search of "any error appearing in the record to the prejudice of appellant." (*Gantt's Digest, sec. 1033.*) This has been the more difficult as all the interests of all the parties have been litigated together, and the orders, proceedings and proof applicable to these lots, required to be sifted out and separated.

We may fairly presume that the appellant relies upon two points:

First—That she was an innocent purchaser for value, without notice; and,

Second—The tax deeds.

That Mrs. Yarborough was the equitable owner is well established. After her death the lands remained in the hands of her husband Green, subject to a trust for her heirs, after the determination of his curtesy. The trust attached to the lands, after Green's devise to his second wife, regardless of notice.

She sold to Burford, who does not appear to have had Notice. notice, actual or constructive. He paid $200, as she alleges, and made his unnegotiable notes for the remainder, although this amount may be a clerical error. The deed exhibited from Mrs. Green to Burford acknowledges the payment of $400, and recites that he executed two notes for $400 each, bearing date the first day of January, 1877, and due on the first days of January, 1878 and 1879, respectively. Burford died leaving the notes unpaid. They passed into the hands of W. D. Freeman, who died also. The appellant, Julia C. Freeman (now Marchbanks), was his administratrix, and foreclosed as such, for the two notes of $400 each, making the heirs and administrator of Burford parties. She herself purchased in the lots, at the sale, on the twenty-eighth day of July, 1879, for the sum of seven hundred dollars, and took the deed of the commissioner in her own name. The sale was confirmed by the court, on the twenty-sixth day of October, 1880.

This suit was begun in 1877, on the 19th of October, and *Lis pendens.* was not pending when Burford bought, which was on the twenty-second day of December 1876. It was pending when the foreclosure was made, and Mrs. Freeman purchased, but we fail to find that either Burford or any one representing his estate had then been made a party to this suit. To subject one to the peculiar notice of *lis pendens*, in the absence of actual notice, the purchase must have been made from one who was a party to the suit at the time. It is not enough if he be brought in afterwards. The pendency of this suit then cannot affect either the purchase by Burford or Mrs. Freeman.

But Burford having never paid the greater part of the consideration could not, before the foreclosure sale, be considered an innocent purchaser at all; except that he would have an equity to reclaim out of the property the money

innocently paid. It is not enough that the money should have been secured to be paid. (*Hardingham v. Nichols, 3 Atk., 304; Jewett v. Palmer, 7 John. Ch., 65.*) See also *Kitteridge v. Chapman* and authorities there cited by Mr. Justice Miller, *36 Iowa, 348.*

Mrs. Freeman, as administratrix, was complainant in the foreclosure suit, and as such entitled to the proceeds of the sale. It was her duty to purchase in the property as administratrix, for the benefit of the estate, if she bought at all, and not in her own right. Bidding individually, her interests conflicted with her duty. No one, it is true, can complain of that, save creditors or distributees of the estate. But if she had bought in as creditor, it is well settled that she would only have taken just such interest as Burford had, subject to all equities against him. She could not place herself in a better attitude by buying as a stranger in violation of her own trust, even if a stranger were entitled to be considered a *bona fide* purchaser.

It follows that Mrs. Marchbanks holds in trust for the heirs of Mrs. Yarborough, with the right to repayment out of the land of all sums which Burford had paid upon it, with interest from time of payment. This is the American doctrine applicable to cases of part payment made *bona fide*. See notes to *Bassett v. Noseworthy, in Leading Cases in Equity, vol. 2, p. 79, et seq., 4th Am. ed.*

Although we deem the tax title void under which she claims, we do not deem it important to discuss that point. Evidently the purchase was made for Freeman to protect his interest in the property upon which he held the incumbrance, and to strengthen his title. The result will be the same, whether the deed be void or good. It will inure to the benefit of all interested in the property, and give only a lien for actual amounts expended.

There was no error in holding the property subject to

Marchbanks v. Banks et al.

the trust in the hands of Mrs. Marchbanks, and that it belonged to complainants. In so far the decree will be affirmed.

But there was an error in the order of reference, in this that it did not provide for so complete an account as her equities required. There should be proof of the actual amount paid by Burford, and of the actual expenditure, by cash valuation for all taxes paid by Mrs. Marchbanks or in her behalf, to be placed to her credit against rents and profits. If the rents and profits do not absorb her credits, she might, on her application for the purpose, have a lien fixed upon the land for payment of balance, and an order upon plaintiffs to pay in the amount by a day to be fixed, or, in default, that the lands be sold for the purpose. Upon the other hand if, upon the coming in of the Master's report, it may appear that the rents and profits exceed the amount of her credits, the complainants will be entitled to a personal decree.

We think it better, also, not to affirm so much of the decree as fixes all the costs upon the appellant, not on account of any error therein, for they were in the sound discretion of the Chancellor. The defense was not litigious, and the Chancellor may, upon being better advised, be desirous himself of modifying that portion of the decree, so that, upon the final determination of the matter below, all the costs may be readjusted according to his views of right and equity, in the aspect of the case then presented.

Affirm so much of the decree as declares complainants entitled to the property and possession of said lots 16 and 17, in block A. Reverse as to the rest, and remand the cause, with directions to make an order of reference as herein directed, and to take such other and further proceedings as may be necessary, according to the principles

and practice in equity and consistent with this opinion. The whole costs of the cause below, as between the complainants and this appellant, will be in the discretion of the Chancellor.

The costs of this court to be divided.

Hon. W. W. SMITH, J., did not sit in this case.