## BOWLING *v.* STOUGH.

Opinion delivered December 18, 1911.

1. APPEAL AND ERROR—WHEN CHANCELLOR'S FINDING SET ASIDE.—A chancellor's finding that a defendant was an innocent purchaser will be set aside where it is against the preponderance of the evidence. (Page 403.)

2. SAME—WAIVER OF DEFENSE.—The defense of the statute of frauds will be deemed to be waived by the defendant where it was not referred to in his original brief, and can not be raised for the first time on petition for rehearing. (Page 404.)

Appeal from Howard Chancery Court; *James D. Shaver,* Chancellor; reversed.

*Sain & Sain* and *T. D. Crawford,* for appellant.

The evidence unquestionably shows that the lands belonged in fact to Bowling, and that Pitts had promised Bowling to convey the lands to him at once. It is also in evidence that the trade between Stough and Pitts was not concluded when Stough came to Arkansas to investigate the title to the land and had paid no money, but he had the right to rescind if the title was not good. If he paid $50.00 in September, 1910, it was with knowledge of appellant's rights, and the payment was without consideration. Moreover, it was so inadequate as to stamp the transaction as fraudulent. 20 Cyc. 521, 500; 56 Ark. 259; 74 Ark. 161; 46 Ark. 551 and cases cited.

*J. W. Bishop,* for appellee.

Assuming that appellant's allegations are true, this case ought to stand in the same category, as between Bowling and Pitts, with contracts entered into with fraudulent intent. Equity will not, or should not, lend its aid to a man who places another in a position to practice a fraud upon the public.

Appellee is a *bona fide* purchaser within the meaning of the law. 142 U. S. 510. And the chancellor's finding ought not to be disturbed unless against the preponderance of the evidence. 71 Ark. 605; 68 Ark. 314; 67 Ark. 200; 72 Ark. 67; 73 Ark. 489; 75 Ark. 52. Nor where the testimony is evenly balanced. 77 Ark. 305; 79 Ark. 256; 81 Ark. 166; 84 Ark. 349; 85 Ark. 62; 89 Ark. 309.

The cancellation of an executed contract is an extraordinary power never exercised by chancery unless fraud or falsity

of representation is clearly proved and complainant was deceived and injured by them.   128 Fed. 854;  90 Md. 685;  82 Va. 399; 81 Ala. 545;  135 Fed. 410;  104 Fed. 756;  43 U. S. App. 490, and cases cited.

HART, J.   J. H. Bowling instituted this suit in the chancery court against M. T. Stough and C. C. Pitts, alleging that Pitts had fraudulently conveyed to Stough certain lands, the title to which were in the name of Pitts.   He alleged that the lands belonged to him, and that no consideration was paid by Stough to Pitts.   The prayer of the complaint is that the deeds from Pitts to Stough be cancelled as a cloud on the plaintiff's title.   The deeds in question were exhibited with the complaint, and were dated respectively, May 30, 1910, and June 4, 1910. The first deed recites a consideration of "$250 and other valuable consideration."   The second deed recites a consideration of "$1,000 and other valuable consideration."   The first deed purported to convey in fee ninety-five acres, and also an undivided half interest in five hundred and twenty acres of land.   The second deed undertook to convey an undivided half interest in. a tract of land in Howard County known as the Murray tract, and estimated to contain one hundred and twenty-five acres.

Stough filed a separate answer, in which he denied the allegations of fraud, and denied any notice of the plaintiff's interest in the land.   He alleged that he was an innocent purchaser for value without notice, and that he paid $2,500 for the land.   Pitts filed no answer.

J. H. Bowling was the owner of a patent on a churn.   He employed C. C. Pitts as agent to make sales of the territory of the patent.   Pitts was to exchange territory of the patent for stock and real estate, and was to have as his commissions as agent fifty per cent. of what he received.   Pitts, as agent of Bowling, sold patent right territory, and took payment therefor in real estate, and for convenience it was agreed that the title should be taken in the name of Pitts.   It was understood between Pitts and Bowling that Bowling was the real owner of the lands, subject to the right of Pitts to his fifty per cent. commission.   About the 14th day of May, 1910, Pitts and Bowling had a settlement with reference to the land obtained from the sale of patent right territory.   The settlement showed that Pitts owed Bowling several hundred dollars from cash

sales, from sales of notes and from sales of tracts of land. In the settlement of these debts, Pitts sold to Bowling all his interest in the lands which Bowling and Pitts owned jointly at that time, and which had been acquired by the sale of the patent right. They authorized Mr. Virgil Owen, cashier of the Lesser-Goldman Bank of Arkansas, to prepare a deed from Pitts to Bowling to said lands.

Pitts received a telegram from home concerning matters that required his immediate presence, and left Nashville before the deeds could be prepared. When he reached Hope, Arkansas, on his way to his home in Alabama, he telephoned back to Virgil Owen at Nashville, Arkansas, to send the deeds he had prepared to him at Birmingham, Alabama. The above facts are testified to both by Bowling and Pitts. In addition, Pitts testified: "The reason that I took the deeds to the land, which I acquired from the sale of the patent rights in my own name, was that it was the custom with Mr. Bowling for each general agent to take deeds to the lands traded for in his own name, collect money, and make final settlement, when the agency was wound up. After leaving Nashville, Arkansas, and reaching Alabama, I sold to M. T. Stough the lands in controversy, and made a deed to him therefor. There was no consideration paid for the land by Stough, and none was to be paid until Stough went to Arkansas and looked over the lands, nor until the settlement of an attachment against the lands, nor until Mr. Bowling approved the sale. The deeds were executed, because Mr. Stough required this to be done before he would go to Arkansas to examine the lands. I was to receive a half interest in the livery business of M. T. Stough as part payment of these lands, and look after Mr. Stough's livery business while he was in Arkansas. I made a full settlement with him in regard to the livery business, and he resumed control of it. I did not run the livery business in debt. I did not retain the cash taken in, but turned it over to Mr. Stough, except my actual living expenses. Mr. Stough refused to deliver me a half interest in his livery business, and also refused to pay the balance in cash due on the lands."

O. P. Sanders testified: "I have known the defendants, Stough and Pitts, for several years, and was present when the trade between them was made. Stough was to give Pitts a

half interest in his livery business in Montgomery, Alabama, and $250 for certain lands in Arkansas. Mr. Stough was not to pay any money on the land until he came to Arkansas and investigated the title. I did not hear Pitts tell Stough how he acquired the lands in Arkansas, but in a general way Stough knew that Pitts had exchanged patent right territory for the lands. After his return from Arkansas, Stough told me that plaintiff, Bowling, claimed an interest in the lands Pitts had sold him."

Virgil Owen testified: "After Pitts reached Hope on the way to Alabama, he telephoned me to send the deeds to him in Alabama, so he could make Bowling a deed to the lands that he held. Bowling and Pitts both had told me that Pitts had agreed to convey to Bowling his interest in the lands for what he owed Bowling, and had directed me to prepare the deeds. Some time in June, 1910, the defendant Stough came to Nashville. He introduced himself to me, and said that he had purchased the lands in controversy from Pitts. I told him that Bowling had an interest in the lands, and he replied that he had given Pitts a thirty-two horse livery stable in Montgomery for his lands. After some further conversation, he stated that I had misunderstood him; that he had not given Pitts the livery stable for the land, and that he was not out actually any money except his expenses to Arkansas."

Several witnesses testified that when Stough came to Nashville to look over the lands, they told him that Bowling owned the land, and he replied that he was not out anything except his expenses to Arkansas. The defendant M. T. Stough testified in his own behalf:

"On or about the 20th day of May, 1910, I traded Mr. Pitts a half interest in my livery business in Montgomery, Alabama, for certain lands in Arkansas. I was to give him a half interest in the business, and was to take up a note of $250 due the Lesser-Goldman Bank at Nashville, Arkansas, for the security of which said bank held a mortgage on said lands. Pitts represented to me at the time he sold the lands in controversy that he owned all of some of them, and a half interest in the others. The deeds showed that J. H. Bowling owned a half interest in five hundred and twenty-five acres of land. While I was gone to Arkansas to examine the land, Pitts was in pos-

session of the livery business, which was given in consideration of the lands in controversy, and exercised full control of the business by hiring rigs, collecting bills, keeping books, and doing all the buying and selling. Pitts and I had a final settlement of this partnership. I bought his half interest and paid him therefor $50 in money, and gave him four promissory notes of $53 each, payable on the 15th day of February, March, and April, 1911. It was after I had my deeds recorded, and was ready to return home that I was informed of the fact that J. H. Bowling claimed to own the entire interest in said land."

On cross examination, Stough denied making the statements to Virgil Owen, and to the witnesses attributed to him in their testimony. He also said that said livery business consisted of about ten horses, eleven single buggies, two traps, one cart, two saddles, ten sets of single harness, two sets of double harness, and office fixtures.

J. F. Stough also testified: "I was present at the transaction between Pitts and Stough in regard to about nine hundred acres of land situated in Arkansas. M. T. Stough exchanged a half interest in his livery business for the land in controversy. The trade was made and deeds passed from Pitts to Stough with the understanding that the titles were regular. After the deeds were made, Stough turned over the livery business to Pitts, and went to Arkansas to look over the lands. It was agreed that, if the titles were not found to be good, Stough had the right to rescind the trade. Pitts apprised Stough of the interest of Bowling in a part of the land, but made no statement that Bowling was the owner of all the land. On the other hand, he stated that Bowling had no interest except as specified in the deeds." Other witnesses testified that Pitts had told them that he had exchanged the Arkansas lands for a half interest in the livery business.

The court found for the defendants, and decreed that the complaint should be dismissed for want of equity. The case is here on appeal.

That the plaintiff is the equitable owner of the lands in controversy is well established. The plaintiff and Pitts both testify to this fact, and their testimony in this respect is not disputed. They say that the lands were acquired in exchange for territory of a patent right belonging to the plaintiff. They

say that Pitts had a half interest therein for his commission, and that the title to the lands were taken in the name of Pitts for the sake of canvenience, but that the lands really belonged to the plaintiff, subject to the right of Pitts to claim his commission. That, upon settlement between the plaintiff and Pitts, it was found that Pitts was indebted to the plaintiff in the sum of several hundred dollars, and it was agreed that Pitts should deed to the plaintiff his interest in the lands in controversy in the payment of said sum. They directed Virgil Owen to prepare the deeds, but Pitts was called home unexpectedly before they could be prepared. As above stated, this testimony is not contradicted, and shows that the plaintiff · was the equitable owner of the land.

The statute of frauds does not enter into the case, for it was not pleaded in the court below, and can not be availed of for the first time here. *St. Louis, I. M. & S. Ry. Co.* v. *Hall*, 71 Ark. 302.

It is next contended by counsel for the defendant Stough that he was an innocent purchaser for value without notice; but we think the preponderance of the evidence is against him on that point. Pitts testified that no money was paid on the land when it was purchased, and that the sale was made, subject to the approval of the plaintiff. This testimony, if true, was sufficient to put the defendant Stough upon inquiry as to what equities the plaintiff had in the land. O. P. Sanders testified that he was present when the trade between Stough and Pitts was made, and that it was agreed that Stough was not to pay any money on the land until he came to Arkansas, and investigated the title. Other witnesses testified that as soon as the defendant arrived in Arkansas they told him that plaintiff was the owner of the land, and that Stough informed them that he had not been out anything on the purchase except his expenses to Arkansas. Therefore we think that the weight of the evidence shows that the livery stable was not turned over to Pitts as part payment. It is true that defendant Stough testified that he did not have any notice that the plaintiff claimed any interest in the land, otherwise than is shown in the deeds, until after he had recorded his deeds, and had started home. He also stated that he gave a half interest in his livery stable in exchange for the land, and he proved by other wit-

nesses that Pitts had stated to them that he had exchanged the lands for his half interest in the livery stable; but, when the whole evidence is taken, read and considered together, we are of the opinion that a clear preponderance of it shows that the defendant Stough had notice that the plaintiff was the equitable owner of the land, and that the said defendant has never paid any part of the purchase price except $50, and that this sum was paid after he had been informed that the plaintiff was the equitable owner of the land. Therefore, we are of the opinion that he can not be protected as a *bona fide* purchaser without notice. *Seawell* v. *Young*, 77 Ark. 309; *Marchbanks* v. *Banks*, 44 Ark. 48; *Parrott* v. *Nimmo*, 28 Ark. 351; Pomeroy's Equity Jurisprudence, § 766.

It follows that the decree must be reversed and remanded with instructions to render a decree in favor of the plaintiff.

### ON REHEARING.

Opinion delivered January 15, 1912.

HART, J. Counsel for appellees call our attention to the fact that the record shows that the statute of frauds was pleaded by appellee Stough in his answer. An examination of the record shows that he is correct; but an examination of his abstract and brief shows that he did not refer to that fact in his original brief, and by the rules of the court it must be treated as having been waived or abandoned.

On the questions which were urged in the original brief of appellee as ground for reversal, we deem what we said in our original opinion sufficient, and therefore the motion for rehearing is denied.