TAYLOR *v.* CHEAIRS.

Opinion delivered February 17, 1930.

*John Baxter,* for appellant.

*P. L. Neville* and *J. T. Cheairs,* for appellees.

MEHAFFY, J. This suit was begun in the Drew Chancery Court by W. E. Taylor, State Bank Commissioner in charge of the Bank of Commerce, McGehee, Arkansas, an insolvent banking corporation, against John T. Cheairs, Jr., and wife, seeking to foreclose a mortgage given by Cheairs and wife to the McGehee Valley Bank, and later transferred to the Bank of Commerce.

John T. Cheairs, Jr., on the 8th day of March, 1920, made a promissory note to the McGehee Valley Bank for

$9,000, said note being payable on the 15th day of November, 1920, and bearing interest at 10 per cent. per annum. To secure the payment of said note, John T. Cheairs, Jr., and wife executed to the McGehee Valley Bank a mortgage on certain property located in the town of Tillar, Drew County, Arkansas.

Appellant alleged that two payments had been made and credited on said note, one of $202.86 on the 23d day of March, 1922, and $150 on the 15th day of February, 1927.

The McGehee Valley Bank failed, and its assets were taken over by the State Bank Commissioner for the State of Arkansas, and sold to the Bank of Commerce in January, 1922.

The appellant alleged that the defendants, John T. Cheairs, Jr., and Maye K. Cheairs, made, executed and delivered to Mrs. J. E. Kincannon a purported deed to part of the property described in the complaint, said deed purporting to have been executed on the 29th day of March, 1927. It was alleged that said deed was executed without consideration, and for the purpose of hindering and defrauding defendant from the collection of the debt. Mrs. Kincannon is the daughter of John T. Cheairs. The appellant prayed that the deed to Mrs. Kincannon be set aside and that its mortgage be foreclosed.

The appellees, John T. Cheairs, Jr., and wife, filed an answer and cross-complaint. They denied the payments credited on the note, and denied that they were the owners of the property. They alleged in their cross-complaint, that the $150 credit on the note was fraudulent, and that it was not a payment made on the note sued on.

In March, 1924, John T. Cheairs, Jr., executed and delivered to the Bank of Commerce of McGehee, Arkansas, a chattel mortgage to secure a note of $5,464.60. Said note was payable December 27, 1924. Among other property included in said mortgage was a certain mule

which was afterwards killed by a train of the Missouri Pacific Railway Company, and the company paid to Cheairs $150, which he gave to the cashier of the bank.

It is also alleged in the cross-complaint that no credits of any sum whatever were ever placed on the margin of the records in Drew County; that the property included in the real estate mortgage was the homestead of John T. Cheairs, Jr., and wife, and appellees also pleaded the statute of limitations.

Mrs. Kincannon also filed answer in which she alleged that she was the owner of the property, having purchased it from John T. Cheairs and his wife.

The chancellor found that appellant's cause of action was barred by the statute of limitations, and dismissed the complaint and, to reverse this decree, this appeal is prosecuted.

The appellant first contends, that the debt was not barred by the statute of limitations; that the credit of $150 made on February 16, 1927, was a payment on the note sued on, and that this payment had the effect of taking the action out of the statute of limitations, and that it was a new promise and acknowledgment of the debt.

The evidence as to the payment of the $150 is conflicting. The preponderance of the evidence, however, supports the finding of the chancellor.

The special deputy bank commissioner, H. A. Daugherty, testified that he took charge of the Bank of Commerce on the 27th day of June, 1927, and was the custodian of all the assets of the bank, and that he found among the assets of the bank the note and mortgage sued on. He testified that the credits were indorsed on the note as shown in the complaint at the time he took charge. The original note and mortgage were introduced. He also testified that they held a chattel mortgage given by Cheairs, and small mortgages indorsed and signed by Cheairs. They held a chattel mortgage

against Cheairs which covers other indebtedness, and there was no credit on any other indebtedness of the $150.

D. O. C. Cleveland testified that he lived at Dermott, and was cashier of the Bank of Commerce from 1925 until it closed its doors in 1927; that Mr. Cheairs handed him the Missouri Pacific Railway check for $150, and that he credited it on the note. When asked if Cheairs made any contention at this time that the bank had any mortgage on a mule, this witness testified that he did not until this suit was brought. When asked if he had ever had any conversation with Cheairs with reference to the payment of any other note, he said, "nothing special." This note, meaning the real estate note, was the one he was more interested in than any others, because he said it was his understanding that it was the only note which the bank had which had any security behind it.

This witness said that when Cheairs handed him the Missouri Pacific check he told him to credit it on the note, and said nothing about a mule note, and that he did credit it upon the real estate note. At the time the bank closed Cheairs owed the bank more than $11,000, besides the realty note and mortgage.

Cheairs testified that included in one of the mortgages that he executed to secure the payment of a certain note to the bank was a mule, and that this mule was killed by one of the trains of the Missouri Pacific Railway Company, and that the railway company paid him $150, and he turned that over to the cashier of the bank. He also testified that he saw the cashier after the mule was killed, and before he collected for it, and told him about the railroad train having killed the mule, and that as soon as he received the voucher he would turn it over to him, and that he did thereafter turn it over to him and told him to credit it on the mule note.

Other witnesses testified about the mule that was killed, described it and gave its name, and the mule they described with the name given by them was included in the chattel mortgage of Cheairs to the bank. Among

others who testified to this was Mr. Lusk, the section foreman.

If Cheairs had given the Missouri Pacific check, and stated to him what the cashier says he did, that is, credit this on my note, this would evidently have been understood to mean the note secured by the mortgage on the mule. But, as we have said, the preponderance of the testimony shows that it was the intention to pay this on the note secured by the chattel mortgage, and the bank therefore had no right to indorse this credit on the other note. But it is contended that when the chattel mortgage was given by Cheairs on March 29, 1924, this mortgage was a new promise and an acknowledgment of the debt.

The mortgage contained the following clause: ''It is understood and agreed by and between the grantor and the grantees herein that this mortgage is not given in settlement of any former indebtedness, but is to secure a new debt as herein set forth; and that this mortgage also is given to secure all other and further indebtedness whether incurred heretofore or hereafter until full and final settlement,'' etc.

The chattel mortgage also contained the following, after reciting the several notes mentioned, aggregating the $5,464.60 due November 1, 1924:

''And this mortgage being given to secure the payment of, not only said notes, any and all renewals thereof, but also any and all other and further indebtedness, whether original or by indorsement, which grantor or either of them may assume, guarantee or contract to pay to the grantee for any loans, advanced, indorsements, credits, overdrafts, or acceptances, made prior to the foreclosure or satisfaction of this mortgage, and all just charges made against the grantor; it being the intention of the parties that this mortgage shall secure all present obligations and all future obligations made prior to the foreclosure of this instrument.''

And another clause is contained in said mortgage, and relied on by appellant as follows:

"To the discharge and satisfaction of all indebtedness and obligations held by grantees against the grantor or either of them."

And it is contended that the mortgage given March 29, 1924, in which the above clauses appear, is a new date from which the statute of limitations would run on all the indebtedness, including the note in controversy. It is contended that this was a new promise, and broad enough to cover all indebtedness owing by Cheairs to the Bank of Commerce.

In support of this contention appellant cites and relies on the case of *Kelly* v. *Telle,* 66 Ark. 464, 51 S. W. 633. The note sued on in that case was barred by the statute of limitations before the beginning of the suit; that is, more than five years had elapsed and no demand had been made. The suit was begun on the 6th day of October, 1893, more than five years after the execution of the note. But on the 8th day of February, 1890, Telle addressed a letter to the payee of the note in which the court said that he definitely and unconditionally admitted the execution and validity of the note sued on, and, in effect, definitely promised to pay the amount according to the legal tenor and effect thereof. And, for that reason, because he had definitely and unconditionally admitted the execution and validity of the note and definitely promised to pay the amount, the court held that this furnished a new date from which the statute ran, and that the bar had not attached when suit was instituted.

We do not think, however, it can be said that there was any definite promise to pay here or any acknowledgment of the indebtedness involved in this suit. Written instruments must be considered as a whole and the intention of the parties ascertained.

The first clause mentioned by appellant in the mortgage is as follows: "It is understood and agreed by

and between the grantor and the grantees herein, that this mortgage is not given in settlement of any former indebtedness, but is to secure a new debt as herein set forth; and that this mortgage also is given to secure all other and further indebtedness whether incurred heretofore or hereafter until full and final settlement.''

It could not have been the intention of the parties to secure the note sued on when they had expressly stated that it was not given in settlement of any former indebtedness, but to secure a new debt as therein set forth. When the whole clause is considered, it was manifestly the intention of the parties not to include any former indebtedness, but to secure the new debt as therein set forth.

The next clause relied on by appellant reads as follows:

''It being the intention of the parties that this mortgage shall secure all present obligations and all future obligations made prior to the foreclosure of this instrument.''

All present obligations meant obligations created at that time, because it has already been stated in the mortgage that it was not given in settlement of any former indebtedness. And, when the three clauses relied on by appellant are construed together, the conclusion that the debt sued on in the instant suit was not intended is inevitable.

Appellant also calls attention to and relies on *Conley* v. *Archillian*, 146 Ark. 64, 225 S. W. 5. The court said in that case: ''It is insisted that one of the notes sued on was barred by the statute of limitations. But this is not true if the payments of interest were made as testified by Conley. Moreover, before the bar of the statute had fallen, the deed from J. W. Conley was executed, and, as found by the court, the assumption at that time of the payment of the two notes furnished in

part the consideration for the deed, and this suit was commenced July 1, 1917.''

Such, however, is not the case here. In fact, there is no question about the payments being made, and the preponderance of the testimony showed that the $150 payment was not made on this note, but on the note secured by the chattel mortgage. Moreover, the court in the instant case found that there was no assumption at the time of the execution of the chattel mortgage.

As we have already said, the intention of the parties is to be ascertained. Where the statute of limitations was pleaded in a case, the court held that there was no bar of the statute, but used this language: ''Though usual, it is not necessary that a mortgage state the amount of the debt to be secured, or that it is evidenced by a note or any other instrument. If it contains a general description, sufficient to embrace the liability intended to be secured, and to put a person examining the records upon inquiry, and to direct him to the proper source for particular information of the amount of the debt, it is sufficiently certain.'' *First National Bank of Corning* v. *Corning Bank & Trust Co.,* 168 Ark. 17, 268 S. W. 606.

The court in the above case also said: ''The case of *Lightle* v. *Rotenberry,* [166 Ark. 337, 266 S. W. 297], is also authority for holding here that the intention of the parties at the time of the execution of the mortgage, as expressed by the language there employed, governs, and that this purpose cannot be enlarged by any contemporaneous parol or subsequent agreement that it should secure any indebtedness other than that referred to in the mortgage.''

The authorities on the question of the reviving a cause of action by written promises or acknowledgments are in hopeless conflict. And while it is not necessary that the acknowledgment or promise should be formal, or that the debt should be specifically described,

the writing relied on must clearly refer to the very debt in question, and the acknowledgment must be express, clear and direct.

One of the recitals in the mortgage is as follows: ''All of said notes being due and payable November 1, 1924, and this mortgage being given to secure the payment of, not only said notes, any and all renewals thereof, but also any and all other and further indebtedness, whether original or by indorsement, which grantor or either of them, may assume, guarantee, or contract to pay to the grantee for any loans, advances, indorsements, credits, overdrafts, or aceptances,'' etc.

We think this clearly shows that the debts mentioned which were secured by this mortgage other than the note were debts that the parties might assume, guarantee, or contract to pay, or for loans, advances, indorsements, etc., and certainly did not include the note sued on.

Said mortgages also has this recital: ''No real estate included in this mortgage.''

When the entire mortgage is considered, the conclusion that it did not refer to the note involved in this suit cannot be escaped. There is no reference to this note and mortgage anywhere in the chattel mortgage, and it is contended that Cheairs is indebted to the bank in approximately $20,000.

''Although specific reference to a particular claim has been declared unnecessary, it has also been held that the promise or acknowledgment must itself specify or plainly refer to the particular demand or cause of action, and it matters not where the uncertainty lies, whether in the acknowledgment or in the identification, its existence is equally fatal to the plaintiff's recovery, or that the acknowledgment should furnish the means by which the character or amount of the debt can be certainly ascertained, or refer to something from which this can be certainly determined. So it is held that the new

promise must arise out of facts which identify the debt with such certainty as will clearly determine its character, and fix the amount due; and a general admission of unsettled matters of account between the parties, or a general admission of indebtedness not referring to any particular claim, where there are several claims, is not sufficient to support a promise to pay any particular demand, and particularly where such general acknowledgment is made to a third person and not to the creditor. * * * There must, however, be a clear recognition of some amount due which is reasonably ascertainable.'' 37 C. J. 1101.

''Many examples of what the rule is on this subject may be found in our books; some of later date may be consulted in the cases of *Cooke* v. *Ashe, Chambers & Campbell* v. *Sims,* and *Williamson* v. *King, Admr. of Bacot.* It is said in the last case cited, the acknowledgment must be of some specific demand; that the promise should be so explicit that the liability could be made apparent by stating the terms of the undertaking in a declaration, reference being had to the old demand for a consideration; that is, the extent of the liability must appear in the terms of the assumption.'' *Brailsford* v. *James,* 3 Strobhart, (S. C.) 171.

''The acknowledgment of Ashe is that the account existed against him, but no particular sum was acknowledged; nor does it appear what specific account was intended to be acknowledged. The acknowledgment, therefore, can amount to no more than the avowal that he owed Cooke on open account an unascertained sum of money which he would pay by installments. The witness does not recollect that he even owed the present account to Ashe nor the amount of the account assumed, but he lately said he had not paid it, and that Cooke did not give him the correct check. There is had no express assumption of any specific amount or account.'' *Cooke* v. *Ashe,* Bailey's Law Cases, S. C., Rep. 246; *Robbins* v. *Farley,* 33 S. C. Law 33, 348.

The cause of action on the note sued on was barred by the statute of limitations, and under our statute the mortgage was barred when the debt was barred. Holding as we do that the cause of action was barred by the statute of limitations, it becomes unnecessary to decide whether the conveyance by Cheairs and his wife to Mrs. Kincannon was valid or void. The property being the homestead, it would not be liable for any other debt of Cheairs, and they could convey it to their daughter or any other person, and it would not be a fraud on the creditors as the homestead is exempt.

The decree of the chancery court is affirmed.