## COWLING *v.* BRITT.

### Opinion delivered July 13, 1914.

1. CROSS APPEALS—WHEN MAY BE TAKEN.—Where plaintiff filed his transcript and obtained an appeal from the clerk of the Supreme Court, the whole record is brought before the court, and the defendant may pray and obtain a cross appeal at any time before the cause is submitted for decision.

2.  LIENS—MORTGAGEE AND PURCHASER—MERGER.—B., the owner of lands, executed a deed of trust to same on April 12, 1909, to P.  On August 14, 1909, an execution upon the same was given to the sheriff and levied thereon in favor of a judgment-creditor.  At a sale under the execution, C. purchased the land.  On September 9, 1910, B. deeded the lands to P.  *Held,* the deed to P. did not destroy his lien under the mortgage to him.

3.  LIENS—MERGER—MORTGAGE AND DEED.—Where a mortgagee receives a conveyance of the equity of redemption, his estate under the mortgage will not merge, in the absence of a showing of an intent to the contrary.

4.  SUBROGATION—DOCTRINE OF.—Subrogation is a doctrine of purely equitable origin, and in its operation is always controlled by equitable principles.

5.  EXECUTION SALE—VALIDITY.—The sale of real estate under an execution, after the return day, is without authority and void.

6.  SUBROGATION—PURCHASER AT VOID EXECUTION SALE—RELIEF.—B. owned land and mortgaged it to P.  Thereafter the land was sold at a void execution sale under the claim of a judgment-creditor and purchased by C.  *Held,* P.'s lien was superior to that of the execution-creditor, but C. is subrogated to the lien of the judgment-creditor, and the land may be sold to reimburse him for the amount paid under the void execution sale, and upon payment of the mortgage to P., C. will be subrogated to P.'s right, and the land may be sold for that purpose.

Appeal from Columbia Chancery Court; *James M. Barker,* Chancellor; reversed in part, affirmed in part.

STATEMENT BY THE COURT.

J. T. Cowling instituted an action in ejectment in the circuit court against W. W. Britt, Cleveland Britt and E. N. Payne to recover possession of a certain tract of land in Columbia County, Arkansas.

W. W. Britt and Cleveland Britt filed an answer in which they denied that W. W. Britt was in possession of the tract of land in controversy, and said that Cleveland Britt was in possession of the same as a tenant of the defendant, E. N. Payne.  They denied that either of them claimed any right or title to the land, and also denied that the plaintiff is entitled to possession of the same.

E. N. Payne filed a separate answer in which he denied that he was in the unlawful possession of the tract

of land in controversy, but stated that he was in possession of the same as the rightful owner thereof.

On motion, the case was transferred to equity and was heard and determined there. The facts are as follows:

Both parties claim from a common source of title. R. J. Stanley recovered judgment in the Supreme Court against W. W. Britt in the sum of $613, with interest thereon from January 21, 1908, until paid, and also for the sum of $153.30, as his costs in that suit expended. On the 10th day of August, 1909, Stanley ordered an execution to be issued upon said judgment by the clerk of the Supreme Court. The execution was directed to the sheriff of Columbia County and came into his hands on the 14th day of August, 1909. The sheriff levied the execution on the lands in controversy, and on the 22d day of September, 1909, duly advertised them for sale on the 15th day of October, 1909. On the latter day the land was sold by the sheriff to J. T. Cowling for the sum of $760.30, he being the highest and best bidder therefor.

After twelve months had elapsed, viz., on the 13th day of March, 1911, the sheriff executed to J. T. Cowling a sheriff's deed for said land, in which the above facts were recited.

On the part of the defendant Payne, it was shown that on the 12th day of April, 1909, W. W. Britt and his wife executed a deed of trust to him on said land to secure the sum of $500, evidenced by the note of W. W. Britt of that date, due and payable on the 1st day of January, 1910, with 10 per cent interest from date until paid. The deed of trust was duly filed for record on the 13th day of April, 1909.

On the 9th day of September, 1910, W. W. Britt and his wife executed a deed to said land to the defendant Payne. The consideration recited in the deed was $800, and consisted of the debt secured by the deed of trust and an additional indebtedness of Britt to Payne.

The chancellor found that the defendant Payne had a lien on the lands in controversy to secure the indebtedness of $500, and the accrued interest recited in the deed of trust given by Britt to him on the lands in controversy, and that the plaintiff, Cowling, was the owner of the lands, and was entitled to immediate possession thereof upon the satisfaction of Payne's lien. It was, therefore, decreed by the court that the plaintiff, Cowling, have and recover from the defendants the lands in controversy, and that said plaintiff have a writ of possession directing the defendants to deliver to him possession of the aforesaid lands upon his payment to the defendant Payne the amount of his lien as above stated.

Both the plaintiff and the defendant Payne prayed an appeal to the Supreme Court, which was granted by the chancery court.

*C. W. McKay,* for appellant.

1. The cross-appeal should be dismissed. 86 Ark. 561; Kirby's Dig., § § 1194-1225; 71 Ark. 318; 86 *Id.* 530.

2. The court did not err in decreeing the title to the lands to be in appellant. He paid the full price in cash and no motion was made by Britt to set aside the sale or return of the sheriff, as was done in 27 Ark. 20. Appellee received the benefit of the purchase price of the land without objection, and thus validated the sale, even if made after the return day of the execution. 47 Ark. 226; 1 Rawle 174; 2 Pa. St. 479; 53 *Id.* 348; 38 N. Y. 266; 21 Iowa 488; Freeman on Ex., § § 340, 286; 31 Ark. 260; 41 *Id.* 372; 106 *Id.* 344.

3. Payne never obtained his deed in satisfaction of any lien. No debt existed. 106 Ark. 344. Britt had neither a legal nor equitable title when the deed was made to Payne. The deed would not amount to a foreclosure of the deed of trust nor a satisfaction of it. 31 Ark. 429.

4. Appellant had the legal right to possession under his purchase at sheriff's sale. 98 Ark. 30. It was error to require him to pay the $500.

*Stevens & Stevens,* for appellee.

1. The deed of trust introduced gave Payne a lien superior to Cowling's claim. 49 Atl. 45; 71 Me. 583; 3 Gray 517.

2. The most plaintiff could claim was the right to redeem. No fraud is shown. 63 Ark. 16. Appellee was in possession under a deed. If the deed were void, he would be a mortgagee in possession. 45 Ark. 376. But the deed was valid. 45 Ark. 376; 32 Ark. 488-9.

3. A sale after the return day of the execution is void. 56 Ark. 45; 23 S. W. 539; 54 *Id.* 1054; 15 Am. Dec. 519; 55 *Id.* 729; 27 Ark. 20.

4. After the date of the sheriff's deed, Payne obtained the legal title. This gave him a paramount title. 32 Ark. 488-9; 45 Ark. 376.

5. To redeem, appellant should have been required to pay the mortgage debt. 53 Ark. 71; 57 *Id.* 536; 84 *Id.* 527. He should be required to pay the $800 and interest. 53 Ark. 71.

6. Title shown in a third party defeats ejectment. 82 Ark. 262.

HART, J., (after stating the facts). The cause was heard and determined before the chancellor at the April term, 1913, of the Columbia Chancery Court. Neither the plaintiff Cowling, nor the defendant Payne, perfected the appeal granted to the Supreme Court by the chancery court. But on the 8th day of April, 1914, the plaintiff, Cowling, obtained an appeal from the clerk of the Supreme Court. Subsequently, the defendant Payne prayed a cross-appeal, which was granted.

(1) When the plaintiff filed his transcript and obtained an appeal from the clerk of the Supreme Court, this brought the whole record before the court and the defendant, under our statute, had a right to pray and obtain a cross-appeal at any time before the cause was submitted to us for decision. *Beidler* v. *Beidler,* 71 Ark. 318; *Howell* v. *Jackson,* 86 Ark. 530.

It will be noted from the statement of facts, that the deed of trust from W. W. Britt and wife on the lands in

controversy to secure the defendant E. N. Payne for an indebtedness of $500 and the accrued interest, owed him by Britt, was executed on the 12th day of April, 1909, and that the execution under which the plaintiff purchased was delivered to the sheriff of Columbia County on the 14th day of August, 1909. Subsequently, on the 9th day of September, 1910, Britt and wife conveyed the land to Payne in satisfaction of his indebtedness secured by the deed of trust, and for other indebtedness owed by Britt at that time to Payne.

It is conceded by counsel for plaintiff that the deed of trust gave Payne a prior lien on the land in controversy to the lien of the execution under which plaintiff purchased, but it is the contention of counsel for plaintiff that there was a merger when Britt conveyed the lands to Payne in September, 1910, and that this made the execution a prior lien on the land.

It will be remembered that the case was transferred to equity and tried there. "Where a mortgagee takes a conveyance of the land from the mortgagor or from a grantee of the mortgagor, if the transaction is fair, the presumption of an intention to keep the security alive is very strong. It is generally for the interests of the party in this position that the mortgage should not merge, but should be preserved to retain a priority over other encumbrances. As the mortgagee acquiring the land is not the debtor party bound to pay off either the mortgage or the other encumbrances on the land, there is nothing to prevent equity from carrying out his presumed intent, by decreeing against a merger." Pomeroy's Equity Jurisprudence (3 ed.), vol. 2, § 793.

In 27 Cyc., page 1381, the doctrine is stated as follows: "Where a mortgagee receives a conveyance of the equity of redemption, his estate under the mortgage will not merge, but will be kept alive to enable him to defend under it against all liens of third persons, whether by mortgage, judgment, or otherwise, attaching between the execution of the mortgage and the giving of the deed, if his intention to that effect is shown, or if there is noth-

ing to rebut the presumption that his intention corre-
sponded with his interest.''

Many cases are cited in support of the rule, and
among them is the case of *Cohn* v. *Hoffman,* 45 Ark. 376.
In that case the court held: ''The purchaser of mort-
gaged land at a sale under execution issued upon a judg-
ment rendered against the mortgagor since the recording
of the mortgage, acquires only the mortgagor's equity of
redemption, and can not maintain ejectment against the
mortgagee in possession after the breach of the condition
of the mortgage. His remedy is by bill in equity to re-
deem.''

In the case of *Neff* v. *Elder,* 84 Ark. 277, the court
said that the doctrine of the merger of the mortgage lien
with the legal title when they are united in the same per-
son has no application in a case where the principles of
equity demand that they be treated as separate.

(2-3) In the application of this doctrine to the facts
in the present case, it may be said that the lien created in
favor of Payne by the execution of the deed of trust on the
lands in controversy to him by Britt is not extinguished
in equity by the subsequent conveyance of the land to him
by Britt, so as to let in a junior lienor in preference to
him. The mortgage will be treated as existing, and the
land, in the hands of Payne, is not liable to any greater
extent to the payment of the lien acquired by the issuance
and levy of the execution than it would have been if the
land had remained in the hands of Britt. The judgment
is subordinated to the lien of the mortgage and the junior
lienor may redeem.

It follows that the chancellor did not err in holding
that the plaintiff could acquire possession of the prem-
ises only by paying off the $500 and the accrued interest
which was secured by the deed of trust executed by Britt
to Payne.

In reference to the issues raised by the cross-appeal,
it may be said that the statement of facts shows that the
land was sold under the execution after the sixty days
within which the sheriff had to return the execution had

expired. In the case of *Hightower et al.* v. *Handlin & Venneys,* 27 Ark. 20, it was held: "The sale of real estate, under an execution, after the return day, is without authority and void."

In the subsequent case of *Huffman* v. *Gaines,* 47 Ark. 226, the court held that a debtor may waive an improper notice of the sale of his property under execution, and does waive it when he suffers the execution to be satisfied, and accepts the surplus of the proceeds of the sale and retains them, after notice of the irregularity. The court further said: "It has been held that even where the sale is void, receiving the purchase money by the debtor would make it valid."

In the present case, there was no surplus arising out of the sale under execution and consequently the execution debtor did not receive any of the proceeds of the sale under execution. But the land was purchased for the amount of the judgment against the execution-debtor, and was applied to the satisfaction of the judgment, and, as far as the record shows, no objection was made thereto by the execution-debtor. In other words, Cowling bid in the land for the amount of the judgment and costs against Britt, and paid that amount to the sheriff, which was applied in satisfaction of the judgment.

In the case of *Neff* v. *Elder, supra,* the court held that a purchaser of land whose money was used in discharging a valid mortgage lien thereon, upon failure of his title, will be subrogated to such lien as against the intervening rights of another.

In the case of *Bond* v. *Montgomery,* 56 Ark. 563, Mr. Justice Battle, speaking for the court, said: "Upon the right of purchasers at void execution or judicial sales to subrogation to the rights of creditors to the payment of whose claims the purchase money paid by them has been appropriated, courts are not. agreed. Many consider them as volunteers acting without compulsion and for no purpose of protecting any interest of their own, and under a mistake of law, and therefore not entitled to the protection of courts of equity. On the other hand, others

hold that the doctrine of subrogation rests upon the natural principles of equity and' justice; that purchasers at such sales who are entitled to the benefit of subrogation are not volunteers that they purchase at a sale made under the coercive process of law, under the honest belief that they are getting the property sold, and their money is actually applied to the benefit of the owner in paying his debts or removing charges or liens upon his property; and that it would be in the highest degree inequitable and against good conscience to permit the owners, the administrators or creditors, as the case may be, to hold or enjoy at the same time the benefit of the property sold, and the money of the purchaser without recompense, and that, in order to prevent this injustice and wrong, they should be subrogated to the rights of the creditors, or to the benefit of the liens or charges, to the payment of whom or which their money has been applied. According to the latter view, it is the belief of the purchaser that he is getting the property sold, and the actual application of the money to the benefit of the owner in paying his debts in removing a charge or lien on his estate, which constitute the equity. There is no conflict between this view and the maxim of *caveat emptor.* That maxim applies where there is a failure of title, 'because of a want of ownership in the property by the defendant in the execution or in the intestate,' or testator, 'but it does not apply to the defects in the title of the purchaser occasioned by a failure of the sale to pass the title of the defendant's intestate,' or testator. The later view has been adopted by this court, and is sustained by the decided preponderance of authority." (Citing authorities.)

(4-5-6) Subrogation is a doctrine of purely equitable origin, and in its operation is always controlled by equitable principles. In the application of the doctrine to the facts in the present case we are of the opinion that Cowling is entitled to be subrogated to the lien of the judgment-creditor in the case of *Stanley* v. *Britt, et al.,* and is entitled to have the land sold for the repayment of the amount to him of the purchase money paid by him for the

land under the execution sale, and, upon the payment of the amount of the mortgage debt of $500, and the accrued interest to Payne, he will be subrogated to Payne's rights under the mortgage, and will be also entitled to have the land sold for that purpose.

It follows that so much of the decree as holds that the lien of Payne for the sum of $500 and the accrued interest, secured by the deed of trust executed to him by Britt, was a prior lien on the land will be upheld. And, in the application of the doctrine of subrogation, if the plaintiff, Cowling, elects to discharge this debt of Britt to Payne and redeem from the mortgage, he will be entitled to be subrogated to the rights of Payne and to have the land sold for that purpose.

As above stated, he will be subrogated to the rights of the judgment-creditor, and will be entitled to have the land sold for the purpose of repaying him the amount he paid under the execution sale for the land.

The decree will therefore be reversed and the chancellor directed to enter a decree in accordance with this opinion.