JOHNSON *v.* GAMMILL.

5-1897                    328 S. W. 2d 127

Opinion delivered October 19, 1959.

*Brockman & Brockman,* for appellant.

*Jay W. Dickey,* for appellee.

CARLETON HARRIS, Chief Justice.   This action was brought by appellants, Winna C. Johnson, *et al,* against appellees, Lewis H. Gammill and wife, on February 8, 1957, seeking judgment for an alleged indebtedness in the amount of $16,523.48, together with interest, and appellants prayed foreclosure of several real estate and chattel mortgages, which had been given to secure the indebtedness.   The various notes (15) were due more than five years before the filing of the suit, but on January 26, 1952, the parties stipulated in writing as to the amount of indebtedness.   After hearing the evidence, the court rendered judgment for appellants in the amount of $8,462.37, plus interest at the rate of 8% per annum until paid.   Appellants bring this appeal, contending that appellees were allowed certain credits to which they were not entitled, and appellees cross-appeal, alleging, first, that the indebtedness was barred by the Statute of Limitations, and further, that the court erred in not permitting them to go behind the stipulation for the purpose of showing that a certain $6,000 note was a duplicate of another note in the same amount, rather than each note representing a different indebtedness.

Inasmuch as the contention that the entire debt was barred by limitations, if correct, would terminate the litigation, we proceed to discuss this point first.   Arkansas Statutes (1947) Anno., § 37-209, provides: "Ac-

tions on promissory notes, and other instruments in writing, not under seal, shall be commenced five (5) years after the cause of action shall accrue and not after.'' The parties entered into a written stipulation on January 26, 1952, as to the total amount of indebtedness due (which agreement will be more fully discussed hereafter), and the suit was brought on February 8, 1957. However, several payments were made subsequent to January 26th, one payment being made on March 21, 1952, at which time, appellant and cross-appellee sent to Mrs. Johnson several checks totaling approximately $1,900. There was no direction as to which note or notes should be credited with this amount, and Mrs. Johnson accordingly had the right to apply this credit as she saw fit. *Hawkins* v. *Hawkins*, 200 Ark. 38, 137 S. W. 2d 904. We have held that part payment interrupts the running of the statute. In *Smith* v. *Grimsley*, 215 Ark. 279, 220 S. W. 2d 428, this Court said:

''The statute of limitations applicable to a promissory note is five years after maturity, as fixed by § 8933, Pope's Digest, and § 37-209 of Ark. Stats. (1947) Anno. Part payment, before the bar attaches, forms a new point from which the statute will begin to run. *Less* v. *Arndt*, 68 Ark. 399, 59 S. W. 763.''

The stipulation between the parties heretofore referred to, was entered into in writing, sworn to before a notary public, and we hold that this instrument constituted an account stated, and started the running of a new five year period.

In Vol. 1, Ruling Case Law, page 211, it is said:

''An account stated presupposes an absolute acknowledgment or admission of a certain sum due, or an adjustment of accounts between the parties, the striking of a balance, or an assent express or implied, to the correctness of the balance. If the acknowledgment or admission is qualified and not absolute, or if there is but an admission that something is due, without specifying how much, there is no account stated, nor does an account stated exist if there is but a partial set-

tlement of accounts, without arriving at a balance, or if there is a dissent from the balance as struck."

Here, there is an acknowledgment of a specific sum due, without any qualification whatsoever; for that matter, there is no contention in the pleadings that the instrument is in error, or that it was fraudulently obtained. In other words, the account stated has not been attacked.

A large part of the argument in the briefs is devoted to a credit given appellees by the court in the amount of $3,236.66. The controversy over this item relates to a note dated April 26, 1950, in the amount of $6,000, which note was secured by a real estate mortgage. The back of the note reflects figures of $236.66 and $3,000, which are added together, making $3,236.66. There is then the notation, "Amt. paid by ck., 12-2-50", and it is initialed "L.H.G." Mr. Gammill testified that this was a payment on the note,[1] which he did not receive credit for, while Mrs. Johnson stated that this was not a payment on the note, and had nothing to do with that indebtedness, but was 1950 rent,[2] which had been figured on the back of the note. The court apparently reached the conclusion that since, admittedly, the amount in question had not been credited on the note, it had not been credited at all, and proceeded to allow this amount as a credit against the total indebtedness agreed to in the account stated. Be that as it may, the payment was made approximately fourteen months before the agreement was reached, stating the account. So, it would certainly appear that the payment was taken into consideration on January 26, 1952, when the parties agreed as to the total amount due. In fact, Mr. Gammill testified that all credits and debits were taken into consideration when the agreement was reached. Inasmuch as no attack is made upon the correctness of the account stated, we are of the opinion that the Chan-

---

[1] Why Mr. Gammill made this notation, rather than Mrs. Johnson, is not explained by appellees.

[2] Mrs. Johnson and others had rented a farm to Mr. Gammill for an annual amount of $6,000, her part being $3,000.

cellor erred in going behind this instrument, and allowing this credit to appellees.

Appellees and cross-appellants allege a mistake in the existence of two notes for $6,000, both dated April 26, 1950, contending that one is a duplicate of the other. We are unable to understand the basis of this assertion, since both notes appear in the record, one being secured by a mortgage on certain town lots in Gould, Lincoln County, Arkansas, due November 15, 1950, and the other secured by a deed of trust on land in Jefferson County, Arkansas, and due November 1, 1950. Hence, it appears that the notes were given to cover different indebtment, and the contention is without merit; at any rate, the same reasoning applies here as in the previous paragraph, *i.e.*, the account stated not being attacked, the parties could not go behind it.

On one of these $6,000 notes, appellees gave a mortgage on a house and four lots in Gould. This property was conveyed to Mrs. Johnson by appellees on February 28th, 1953. Mrs. Johnson credited the note with the amount of $4,500, which she testified was the amount agreed upon between the parties. Mr. Gammill testified that Mrs. Johnson agreed to credit him with whatever amount the property brought at sale, and that she had sold it for $6,500. The deed itself reflects the consideration to be $10 and ''other valuable consideration.'' The Chancellor found, ''On the delivery of the deed by the mortgagor to the mortgagee, there was constituted a merger of estates. The mortgage debt was satisfied by the acceptance of the deed.'' This resulted in appellees receiving a $6,000 credit, instead of the $4,500 credit, which had been given by Mrs. Johnson. Generally speaking, the law seems to be as stated in *Corpus Juris Secundum*, Vol. 59, § 440, page 677:

''The question whether a conveyance of the equity to the mortgagee results in a merger of the mortgage and fee is primarily one of intention of the parties, particularly, according to the decisions on the question, the intention of the mortgagee, for the mortgagee has

an election in equity to prevent a merger and keep the mortgage alive.''

Of course, in the instant case, neither party stated there was any agreement to cancel the $6,000 note as a result of the execution of the deed; to the contrary, appellants say a lesser amount was to be allowed, while appellees say that a larger amount was to be allowed. Reading further, however, in § 440 of *Corpus Juris Secundum*, we find this language:

"The intention of the parties on the question of merger may be expressly declared, or it may appear from the conduct of the parties, the circumstances of the transaction, and the particular equities of the case. In any event, however, the intention to merge must be clear. An intent to effect a merger is indicated where, after acquiring the equity, *the mortgagee conveys the property or leases it to a stranger,* * * * .''[3]

Admittedly, Mrs. Johnson sold this property, and further, the record indicates that the property was of sufficient value to cover the indebtedness which it secured. We conclude that the Chancellor correctly found a merger, and properly held this mortgage debt extinguished.

The amount of interest allowed appellants is questioned by appellees in their exceptions to the Findings and Decree of the court; however, this is not argued in appellees' brief, and is therefore waived. *Purifoy* v. *Lester Mill Co.*, 99 Ark. 490, 138 S. W. 995, *Bowling* v. *Stough*, 101 Ark. 398, 142 S. W. 512, *Connell* v. *Robinson*, 217 Ark. 1, 228 S. W. 2d 475.

We have examined the entire record, and are unable to say that the Chancellor erred in any respect, other than in allowing appellees the credit in the amount of $3,236.66. The decree is therefore modified to the extent of disallowing this credit, and the cause is remanded to the Jefferson Chancery Court for further proceedings not inconsistent with this Opinion.

---

[3] Emphasis supplied.