819 S.W.2d 268 (1991)
307 Ark. 52
CONSTRUCTION MACHINERY OF ARKANSAS, Appellant,
v.
Jerry D. ROBERTS and Gloria A. Roberts, Appellees.
No. 91-157.
Supreme Court of Arkansas.
November 18, 1991.
Don P. Chaney, Arkadelphia, for appellant.
Karlton H. Kemp, Jr., Barry A. Bryant, Texarkana, for appellees.
DUDLEY, Justice.
The main issue in this case is whether a first mortgage lost its priority over a junior lien when the holder of the first mortgage chose not to foreclose, but instead chose to take a "warranty deed in lieu of foreclosure," and then resell a substantial part of the same real estate to a stranger to the title without taking any action against the holder of the junior lien. Later, after reselling part of the land to the stranger, the first mortgagee filed suit to cancel the intervening lien. The chancellor granted the relief prayed. We reverse and hold that under the facts of this case a merger occurred, the first mortgage debt was extinguished, and the intervening lien remains outstanding.
On September 1, 1985, Jerry and Gloria Roberts, the sellers, and Dwain and Virginia Glass, the buyers, entered into a written contract by which the sellers agreed to sell five (5) acres in Miller County to the *269 buyers for $96,750, with $5,000 paid that date and the rest to be paid in monthly installments. The contract provided that upon payment in full the sellers would execute a warranty deed. The contract was recorded in the miscellaneous records of Miller County. The buyers failed to pay in full and a warranty deed was never given them.
On October 20, 1987, the sellers sold four (4) additional tracts to the buyers. These tracts, consisting of sixteen (16) acres, were also in Miller County. This acreage was conveyed by an instrument styled "Warranty Deed With Lien." The deed contained language which reserved a vendor's lien in the sellers. On the same day, the buyers additionally executed a deed of trust to the sellers which provided that it constituted the security for the $37,000 promissory note given to purchase the sixteen (16) acres. The note was payable in monthly installments.
On October 24, 1989, Construction Machinery of Arkansas, the intervening lien holder, obtained a judgment against buyer Dwain Glass, but not against buyer Virginia Glass, in the amount of $9,766.77. This judgment was recorded in Miller County on the same day and became a judgment lien. See ArLCode Ann. § 16-65-117 (1987).
By late October 1989, the buyers were in default to the sellers, and the sellers sought a remedy. They did not conduct a title search nor did they foreclose their security interests. Instead, they reached an agreement with the buyers by which the buyers executed a warranty deed conveying all twenty-one (21) acres back to the sellers. This warranty deed, dated November 27, 1989, provided that it is "in cancellation of Contract of Sale dated August 16, 1985," and "also in lieu of foreclosure of Deed of Trust dated October 20, 1987" and "also in lieu of foreclosure of the vendor's lien retained in Warranty Deed dated October 20,1987." The next day, November 28, the sellers quitclaimed 1.2 acres back to the buyers.
On April 24, 1990, the sellers sold a 5.622 acre tract, which was a part of the twentyone (21) acres, to strangers to the title, Kevin and Laura Bassett. This 5.622 acre tract, which included a residence, was sold to the Bassetts for $70,000. The escrow agent, Miller County Abstract Company, required the sellers to leave $12,500 of the purchase price in escrow because of the cloud on the title created by the judgment lien.
The sellers were obviously displeased about the $12,500 being retained, and so they filed this suit in chancery court against the judgment lien holder and the original buyers. In it, they asked that the judgment lien be cancelled, or, in the alternative, that they be granted foreclosure against the buyers and the judgment lien holder, and that their mortgage be declared prior to that of the judgment lien holder. The chancellor cancelled the judgment lien. That ruling was in error.
The vendor's lien and the deed of trust, for convenience hereafter labeled "first mortgage," originally held priority over the judgment lien since the first mortgage was recorded before the judgment was entered of record in the county where the land is located. See Alston v. Bitely, 252 Ark. 79, 477 S.W.2d 446 (1972). In addition, the judgment lien was a lien against only buyer Dwain Glass's interest in the land, but when buyer Dwain Glass deeded the twenty-one (21) acres back to the sellers, they took it back subject to the judgment lien against his interest. Automotive Supply, Inc. v. Powell, 269 Ark. 255, 599 S.W.2d 735 (1980).
The sellers held different interests in the sixteen (16) acres at different times. Prior to the sale they held fee simple absolute. Immediately after the sale, they held a first lien security interest, while the buyers held at least equitable title and alsc the equity of redemption. See Bank of Oak Grove v. Wilmot State Bank, 279 Ark. 107, 648 S.W.2d 802 (1983) for discussion of titles held by a mortgagor and mortgagee. Immediately after the buyers conveyed their title and equity of redemption back to the sellers, the sellers once again owned all of the interests. The issue became whether these interests remained separate or merged.
*270 Whether a merger occurs when a mortgagee acquires the mortgagor's interest is largely a question of intent. "The intention and interest of the party who unites the two estates in himself will determine whether or not a merger takes place." 2 Jones on Mortgages, § 1080, at 509 (1928). The doctrine of merger is not favored and will not be applied in the absence of an intent on the part of the mortgagee, or unless the application of the doctrine is required by the equities of the particular case. Commonwealth Building & Loan Ass'n. v. Martin, 185 Ark. 858, 49 S.W.2d 1046 (1932). The evidence must be strong before we will apply the doctrine of merger. Id.
In Cowling v. Britt, 114 Ark. 175, 180, 169 S.W. 783, 784 (1914), as a part of the holding of the case, we cited Pomeroy's Equity Jurisprudence as authority for the following statement:
`Where a mortgagee takes a conveyance of the land from the mortgagor or from a grantee of the mortgagor, if the transaction is fair, the presumption of an intention to keep the security alive is very strong. It is generally for the interests of the party in this position that the mortgage should not merge, but should be preserved to retain a priority over other encumbrances.'
In addition we wrote:
`Where a mortgagee receives a conveyance of the equity of redemption, his estate under the mortgage will not merge, but will be kept alive to enable him to defend under it against all liens of third persons, whether by mortgage, judgment, or otherwise, attaching between the execution of the mortgage and the giving of the deed, if his intention to that effect is shown, or if there is nothing to rebut the presumption that his intention correspond with his interest.' Id. at 180-81, 169 S.W. at 784-85 (citing Cyc, page 1381).
Holdings such as the one in Cowling v. Britt, supra, are eminently fair. The parties holding all of the interests in the land were before the court. The only issue was one of priorities. Once the priorities were determined and the land sold, the parties were paid, to the limit of the sale price, according to the priorities. The junior lien holders had the same chance to be paid that they had originally.
Yet, while the evidence must be strong before we will apply the doctrine of merger, we have applied it. Baily v. Eakes, 168 Ark. 872, 271 S.W. 978 (1925). A fuller explanation is given in the more recent case of Johnson v. Gammill, 231 Ark. 1, 328 S.W.2d 127 (1959). In that case the mortgagee, after receiving the property back, conveyed it to a third party. As a part of the holding of the case, we quoted from Corpus Juris Secundum, as follows:
`The intention of the parties on the question of merger may be expressly declared, or it may appear from the conduct of the parties, the circumstances of the transaction, and the particular equities of the case. In any event, however, the intention to merge must be clear. An intent to effect a merger is indicated where, after acquiring the equity, the mortgagee conveys the property or leases it to a stranger, ....'
Id. at 6, 328 S.W.2d at 130.
Here, we have the same situation. The mortgagees, after receiving back the property by "Warranty Deed in lieu of foreclosure," conveyed a part of the property to strangers to the title. This act constituted convincing evidence that the mortgagees intended to effect a merger so that the complete fee then could be transferred to the stranger. No other result would be fair. After the sale of all or a good part of the property involved, $70,000 worth in this case, there could no longer be a foreclosure sale involving only the property remaining in the first mortgagee which would give the junior lienholder any realistic chance of recovery of the amount owed him. Cancelling the junior lien without any sale, as the chancellor did, also unfairly deprived the junior lienholder of any chance of recovery.
If our law were that a first mortgagee could take back the property by deed in lieu of foreclosure and then resell it free and clear of an intervening encumbrance, *271 we would wreak havoc in the marketplace of second mortgages. Under such circumstances, a second mortgage, or other junior encumbrance, would not constitute a meaningful security. The holders of intervening encumbrances are entitled to more; they are entitled to a fair chance to enforce their liens before those liens are extinguished.
The lienholder in this case, who is the appellant, does not separately argue that the doctrine of merger applies to the buyers equitable interest in the five (5) acre tract which was created by the contract of sale, and we do not address the issue.
There is a cross-appeal involving an entirely different matter. As set out, the escrow agent, Miller County Abstract Company, held in escrow $12,500 of the amount paid by the third party purchasers, the Bassetts. When the suit now before us was pending in the trial court, the abstract company interpleaded the $12,500 in this case. The trial court awarded an attorney's fee to the interpleader's attorneys. The sellers, who are the cross-appellants, contend that the trial court erred in awarding an attorney's fee in an interpleader action. The argument is meritorious. See Saunder v. Kleier, 296 Ark. 25, 751 S.W.2d 343 (1988). Cross-appellees ask us to approve the fee under the relatively new statute providing for attorneys' fees in an action based on a contract. See Ark.Code Ann. § 16-22-308 (Supp.1991). The interpleader action does not come within the statute. Accordingly, we also reverse on cross-appeal.
Reversed on direct appeal and on crossappeal.