988 F.2d 838
 FEDERAL DEPOSIT INSURANCE CORPORATION, as Manager of FSLIC
Resolution Fund as Receiver for Audubon Federal
Savings & Loan Association of New
Orleans, Louisiana,
Plaintiff-Appellee.
Clifford Cole Oil Company, Intervenor.
v.
Royce LEE; Kathy Lee; Alex Gates, Trustee for Dr. Glenn
Wegener; Nancy Wegener; J.M. Denton, Jr.; Ivy Dean
Spradling; Raymond Abramson, Trustee for Ivy Dean
Spradling; United Southern Bank of Clarksdale; Merchants &
Planters Bank; United States of America; Victor L. Nutt;
Jean Sanford; Commercial Union Insurance Company;
Darrell Larker; Haygood of Arkansas; Timothy Leathers,
Commissioner of Revenues, State of Arkansas; Arkansas
Department of Labor; Patricia A. Denton; Hercoleed, Inc.,
Defendants.
Marbella & Company of Arkansas, Inc., Defendant-Appellant.
Coleman's Service Center, Inc. Defendant-Appellant.
 No. 92-1758.
 United States Court of Appeals, Eighth Circuit.
 Submitted Dec. 17, 1992.
 Decided March 16, 1993.
Rehearing Denied April 14, 1993.
 
 1
 Keith Blackman, Jonesboro, AR, argued, for appellant.
 
 
 2
 E. Whitney Drake, Washington, DC and James H. Penick, III, Little Rock, AR, argued, for appellees.
 
 
 3
 Before GIBSON and WOLLMAN, Circuit Judges, and STROM,* District Judge.
 
 
 4
 STROM, District Judge.
 
 
 5
 Coleman Service Center, Inc. ("Coleman") appeals[1] the district court's Judgment of Foreclosure on a one-acre tract of property on which Coleman possessed a leasehold interest. We affirm.
 
 I.
 
 6
 The following is a chronological summary of the transactions which are relevant to the issues raised by the appellant.
 
 
 7
 On May 4, 1984, Audubon Federal Savings & Loan Association of New Orleans, Louisiana ("Audubon") entered into a construction loan agreement for 4.2 million dollars with D'Jer, Inc. ("D'Jer"), Darrell Larker, Royce Lee, and James McGowan. Audubon loaned the money to finance a development project ("Project"), which was to include a motel, a truck stop and repair center, and a convenience store. The parties signed a promissory note, which was secured by a Deed of Trust ("1984 deed") on a 15 acre and a 1.159 acre parcel of property, and the assignment of D'Jer's leasehold interest on a one-acre parcel of property.[2]
 
 
 8
 In October, 1984, D'Jer leased the entire Project to Coleman. On February 25, 1985, D'Jer assigned its rights under the Coleman lease to Audubon pursuant to the construction loan agreement.
 
 
 9
 Later in 1985, the Project began to experience financial difficulties. Because of these difficulties, no payments were made on the 1984 promissory note and Audubon instituted foreclosure proceedings. In lieu of foreclosure, Audubon agreed to restructure the existing debt. Pursuant to this agreement, on December 31, 1985, Audubon entered into a Purchase and Sale Agreement ("Agreement") with Royce Lee, J.M. Denton, Troy Coleman (the principal stockholder of Coleman), Dr. Glenn Wegener, and Dr. Hermie Plunk. The Agreement provided that Audubon would contribute additional funds to finance the completion of the project in exchange for Lee, Denton, Coleman, Wegener, and Plunk's acceptance of the Project indebtedness (Coleman and Plunk later withdrew from the plan).
 
 
 10
 In accordance with the Agreement, D'Jer's interest in the Project was transferred to Audubon by warranty deed and bill of sale dated February 19, 1986. The deed to Audubon stated that it (Audubon) was taking the property subject to the 1984 deed of trust. On that same date, D'Jer also separately assigned to Audubon its leasehold interest in the Coleman lease. This assignment was recorded in June, 1986.
 
 
 11
 Subsequently, on March 12, 1986, in furtherance of the agreement, Audubon conveyed to Lee, Denton and Wegener by Corporation Deed, its interest in the 15 acre and 1.159 acre parcels of property. Contemporaneously with the Corporation Deed, Lee, Denton, and Wegener executed a promissory note for 5.5 million dollars, which included additional principal plus the principal and unpaid interest on the original 1984 note. As security for the note, Lee, Denton, and Wegener, together with their spouses, executed and delivered a mortgage to Audubon on the 15 acre and 1.159 acre parcels of land. On March 13, 1986, these same individuals transferred their interest in the property to Hercoleed, Inc., a corporation comprised of Lee, Denton, and Wegener. On June 20, 1986, the Federal Home Loan Bank Board placed Audubon into receivership.
 
 
 12
 On November 18, 1987, in response to a total absence of payments on the 1984 and 1986 notes, the Federal Savings and Loan Insurance Corporation ("FSLIC"), as receiver of Audubon, filed a foreclosure action, which was subsequently dismissed pursuant to a settlement agreement. The settlement agreement later failed, and the Federal Deposit Insurance Corporation ("FDIC"), which succeeded to the duties of the FSLIC, refiled the foreclosure action.
 
 
 13
 In late 1989, defendant Marbella & Company of Arkansas, Inc. ("Marbella"), unsuccessfully attempted to purchase the FDIC's interest in the 1.159 acre, 15 acre, and one-acre parcels of property. Then, on December 28, 1989, Marbella acquired all of the stock in D'Jer and Hercoleed. On March 20, 1990, Marbella acquired an alleged fee simple interest in the one-acre parcel.
 
 
 14
 After hearing the evidence at the foreclosure hearing, the district court found that the parties intended that the plaintiff's lien on the one-acre parcel would maintain its priority over any of the defendants' interest in the property. Because of this finding, the court held that the interest of the FDIC was paramount to the interest of Marbella and Coleman. In addition, the district court found that a convenience store lease amendment, which was entered into on June 1, 1989, by Hercoleed and Coleman to provide for lower rent payments, was entered into without approval from or notice to Audubon or its receiver. Apparently the district court believed that this failure to give notice and obtain approval gave Audubon the right to foreclose on the lease on the one-acre parcel[3] because D'Jer had previously assigned to Audubon all the rents and profits under the lease.
 
 
 15
 On January 24, 1992, the district court, in response to a Motion for Clarification filed by Marbella, filed an Order and Supplemental Opinion to clarify its earlier ruling. In its Supplemental Opinion, the court stated that the plaintiff, as assignor of the twenty-year 1971 leasehold rights in the one-acre parcel, possessed the right of first refusal that was contained in the 1971 lease. This right was denied, the court explained, when Hercoleed sold the one-acre parcel to Marbella in December, 1989. Thus, the court held, plaintiff was entitled to exercise the right to purchase the property at the 1989 sale price plus interest.
 
 
 16
 Coleman argues on appeal that (1) Audubon had notice of and gave approval to the amendment of the lease agreement entered into by Coleman and Lee, (2) the court did not possess jurisdiction to decide the issue of whether Coleman breached the lease agreement because the court had previously dismissed that issue, (3) the district court erred in determining that the sublease was subordinate and subject to foreclosure by the FDIC because Audubon's rights under the 1984 deed were destroyed when it restructured the loan in 1986.
 
 II.
 A.
 
 17
 Coleman's first and second arguments examine the trial court's finding that Coleman and Lee entered into the amendment to the lease agreement without the approval of, or notice to, Audubon or its receiver. Coleman argues that this ruling is both factually and legally erroneous. Coleman alleges that the judge's ruling was factually erroneous because the testimony at the hearing indicated that the FDIC or Audubon had notice and gave approval to the lease amendment. Coleman contends that the judge's ruling was legally erroneous because the judge lacked the jurisdiction to decide the issue.
 
 
 18
 Findings of fact by the trial court are reviewed by a "clearly erroneous" standard. Fed.R.Civ.P. 52(a). Under this standard, an appellate court will not disturb a district court's finding of fact on an issue unless, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 565, 105 S.Ct. 1504, 1507, 84 L.Ed.2d 518 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Thus, if a district court's factual determination "falls within a broad range of permissible conclusions," then it must be upheld. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 400, 110 S.Ct. 2447, 2458, 110 L.Ed.2d 359 (1990) (citing Anderson, 470 U.S. at 573-74, 105 S.Ct. at 1511-12).
 
 
 19
 In support of its argument that the trial court's finding of fact on the issue of notice and approval was clearly erroneous, Coleman argues that the testimony at trial indicated that Audubon had notice of and gave approval to the lease amendment. Specifically, Coleman cites the Vice President of Audubon, Malcolm Crowe's testimony, wherein Crowe stated that he had met with Lee and Denton prior to the lease amendment and that the three of them had discussed changing Coleman's lease. In addition, Coleman asserts, Royce Lee testified that Crowe told them to do anything they could to help the business. Finally, Coleman alleges, Troy Coleman testified that the FDIC orally approved of the lease amendment and that the FDIC had examined the records and monthly reports showing the payments made under the lease. All of this testimony, Coleman argues, demonstrates that the plaintiff knew and approved of the lease amendment. Thus, Coleman urges this court to overturn the trial court's finding of fact on the issue of whether Audubon or its receiver had notice of and gave approval to the lease amendment.
 
 
 20
 Given the state of the record, it is readily apparent that the district court's finding of fact on this issue was not clearly erroneous. This court has reviewed the trial transcripts and finds reasonable the trial court's determination that neither Audubon nor its receiver were given notice or approved of the lease amendment. Crowe testified that "there was some talk about a lease, but I don't know if anything came of it or not." In addition, Robert Serio, Audubon's attorney at the time of receivership, testified that he was not aware of any oral lease amendment and possessed no knowledge that any problems with the original lease existed while he represented Audubon. Finally, Joseph Stevens, FDIC representative, testified that neither the FDIC nor FSLIC approved any lease amendment. The trial court's factual determination that the lease amendment was entered into without notice to or approval from Audubon or its receiver is not clearly erroneous.
 
 
 21
 Coleman argues, however, that the district court's finding on the issue of notice and approval is also legally erroneous. Coleman contends that the ruling is legally erroneous because the court, on February 8, 1991, dismissed portions of paragraphs 33 and 34 of plaintiff's third amended complaint that dealt with the default and breach of the lease.[4] This dismissal, Coleman asserts, precluded any findings the court could make at the foreclosure proceedings with regard to whether the lease was breached. Therefore, Coleman contends, because the issue of notice and approval relates to the issue of whether the lease was breached, the trial court lacked jurisdiction to decide the issue.
 
 
 22
 We acknowledge that the trial court dismissed certain portions of the complaint which addressed whether there was default and breach under the lease. However, we also note that portions of the complaint that the trial court did not dismiss presents the issue of whether the lease was amended without notice to or the approval of Audubon or its receiver. Specifically, paragraph 31 states that "without any notice whatsoever to Plaintiff" the defendants Coleman and Hercoleed "unilaterally entered into an agreement attempting to modify and amend the convenience store lease." That paragraph further alleges that at the time of this attempted modification, Hercoleed was in default "under the terms of the restructured financing on the project." Plaintiff then alleges that the amendment is void ab initio. As this paragraph was not dismissed, the issue of notice and approval was properly before the court. Accordingly, the trial court had jurisdiction to decide these issues.B.
 
 
 23
 Coleman's third issue, its third and fourth assignments of error, focuses on whether Coleman's leasehold estate was subordinate to and foreclosable by the FDIC. The district court held that, in the absence of agreement or evidence of contrary intent, "the security of the original mortgage follows the note or renewal thereof." Simpson v. Little Rock N. Heights Water Dist., 191 Ark. 451, 86 S.W.2d 423, 425 (1935) (citing Oliphint v. Eckerley, 36 Ark. 69 (1880)). Finding no contrary intent, the court ruled that the 1986 restructuring did not release the 1984 debt or deed of trust and that Audubon and its receiver maintained its rights under the 1984 deed. Those rights included D'Jer's assignment of its leasehold interest in the one-acre parcel.
 
 
 24
 As an initial matter, we note that, unlike factual issues, an appellate court does not give any deference to a district court's interpretation of state law. Salve Regina College v. Russell, --- U.S. ----, ----, 111 S.Ct. 1217, 1225, 113 L.Ed.2d 190 (1991). Rather, legal issues are reviewed under an independent de novo standard. Id. The issue of whether Audubon maintained its rights under the 1984 deed contains both issues of law and fact, which will require application of both de novo and clearly erroneous standards of review.
 
 
 25
 Coleman argues that the 1986 restructuring of the financing for the Project destroyed the 1984 4.2 million dollar debt. Because this debt no longer existed, Coleman asserts, the FDIC could not foreclose on leasehold rights contained in the deed of trust, which was the security for the debt. Coleman bases its argument on the legal principle that if a debt does not exist, then the mortgage securing the debt cannot be foreclosed. See Sliman v. Moore, 198 Ark. 734, 131 S.W.2d 1, 4 (1939) (holding that mortgagee could not foreclose on a mortgage securing promissory notes that had been paid in full), and Taylor v. Cheairs, 181 Ark. 4, 24 S.W.2d 852, 855 (1930) (holding that if a cause of action is barred on the underlying note because of the statute of limitations, then foreclosing the mortgage is also barred).
 
 
 26
 Coleman also argues that the lien and the debt were discharged when Audubon took the deed in lieu of foreclosure. Essentially, Coleman argues that Audubon's interest under the 1984 deed of trust merged with its interest in the land when Audubon acquired the deed on the property. Further, Coleman maintains that the parties intended and were aware that such a merger would occur under the restructured agreement.
 
 
 27
 In a recent case, the Arkansas Supreme Court held that, "[w]hether a merger occurs when a mortgagee acquires the mortgagor's interest is largely a question of intent." Construction Mach. v. Roberts, 307 Ark. 252, 819 S.W.2d 268, 270 (1991).[5] The court noted that, "[t]he doctrine of merger is not favored and will not be applied in the absence of an intent on the part of the mortgagee, or unless the application of the doctrine is required by the equities of the particular case." Id. (citing Commonwealth Building & Loan Ass'n v. Martin, 185 Ark. 858, 49 S.W.2d 1046 (1932)). In fact, courts have created a presumption, which can only be overcome by strong evidence, that the mortgagee intended to keep the security alive. Id. (citing Cowling v. Britt, 114 Ark. 175, 169 S.W. 783, 784-85 (1914)).
 
 
 28
 In Construction Mach., the court found that merger did apply because the mortgagee, after obtaining the deed in lieu of foreclosure, conveyed the property to a stranger. Conveying the property to a stranger, the court held, indicated "an intent to effect a merger." 819 S.W.2d at 270 (quoting Johnson v. Gammill, 231 Ark. 1, 328 S.W.2d 127, 130 (1959)). No such conveyance occurred in this case. In fact, the only conveyance following Audubon's taking of the deed in lieu of foreclosure was a conveyance back to the mortgagors in furtherance of the agreement to restructure the 1984 loan. We think such a transfer fails to overcome the presumption that Audubon intended to keep the 1984 deed alive.
 
 
 29
 This case can also be affirmed on the grounds enunciated by the trial court that, in the absence of agreement or evidence of contrary intent, "the security of the original mortgage follows the note or renewal thereof." Simpson, 86 S.W.2d at 425. In other words, the Arkansas Supreme Court explained, a presumption exists that when parties execute a renewal note, the security for the original indebtedness remains as security for the new note and the original debt remains. In this case, the 5.5 million dollar note was both a renewal of the original note plus a new note for additional principal. It is inconsistent with the record and existing law and principles of logic to find that Audubon intended to release part of its security when it loaned additional principal. Accordingly, we find that the evidence supports the trial court's finding that both the original 1984 deed and the debt which the deed of trust secured still existed after the restructuring of the debt in 1986. Therefore, the plaintiff's rights under the original deed of trust, which included the assignment of rights under the one-acre of property lease, were still in effect after the parties restructured the debt.
 
 III.
 
 30
 Finding no error, we affirm the judgment of the district court.
 
 
 
 *
 The Honorable Lyle E. Strom, Chief Judge, District of Nebraska, sitting by designation
 
 
 [1]
 Marbella & Company of Arkansas, Inc., also appealed the district court's judgment. However, because this court has been advised that Marbella has abandoned its appeal, this opinion will be limited to the issues raised by Coleman
 
 
 [2]
 The lease that D'Jer assigned to Audubon was signed June 24, 1971. This lease was to commence July 6, 1971, for a period of twenty (20) years and contained an option to extend an additional five (5) years
 
 
 [3]
 It was undisputed that the FDIC was entitled to a judgment of foreclosure on the 15 acre and 1.159 acre parcels
 
 
 [4]
 The trial court dismissed those portions of the paragraphs because the issues of default and breach related to an Unlawful Detainer suit that was pending in state court in Monroe County, Arkansas
 
 
 [5]
 For purposes of merger of title, no legal difference exists between a deed of trust and a mortgage. In fact, although the court in Construction Mach. labeled the security interest in that case a "mortgage," it was actually a deed of trust. 819 S.W.2d at 269